UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POPPY CLEMONS,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CIVIL ACTION NO. 3:21-CV-00456<br><br>(MEHALCHICK, MJ) |

**MEMORANDUM**

Plaintiff Poppy Clemons brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6).

For the reasons set forth below, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to deny Clemons benefits is **AFFIRMED**. **FINAL JUDGMENT** is entered in favor of the Commissioner. The Clerk of Court is directed to **CLOSE** this case.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

On November 14, 2018, and January 15, 2019, Clemons protectively filed applications under Title II and Title XVI of the Social Security Act, respectively, claiming disability

beginning November 7, 2018. (Doc. 11-2, at 12). The Social Security Administration initially denied the applications on May 3, 2019, and upon reconsideration on October 11, 2019, prompting Clemons's request for a hearing, which Administrative Law Judge (ALJ), Timothy Wing, held on March 12, 2020, and due to technical difficulties, a supplemental hearing was held on June 16, 2020. (Doc. 11-2, at 12). In a June 26, 2020, written decision, the ALJ determined that Clemons is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 11-2, at 22-23). On January 13, 2021, the Appeals Council subsequently denied Clemons's request for review. (Doc. 11-2, at 2).

On March 12, 2021, Clemons commenced the instant action. (Doc. 1). The Commissioner responded on July 14, 2021, providing the requisite transcripts from Clemons's disability proceedings. (Doc. 10; Doc. 11). The parties then filed their respective briefs, with Clemons raising one principal base for reversal or remand. (Doc. 16; Doc. 19; Doc. 20).

II. **STANDARD OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[1] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Clemons was disabled, but whether the Commissioner's determination that Clemons was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of

the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III. **THE ALJ'S DECISION**

In a decision dated June 26, 2020, the ALJ determined that Clemons "has not been under a disability, as defined in the Social Security Act, from November 14, 2018 through the date of this decision." (Doc. 11-2, at 22-23). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2). Here, the ALJ determined that "[Clemons] ha[d] not engaged in [SGA] since November 7, 2018, the alleged onset date." (Doc. 11-2, at 15). Thus, the ALJ proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Clemons had five severe, medically determinable impairments: (1) obesity, (2) fibromyalgia, (3) chronic obstructive pulmonary disease, (4) asthma, and (5) hip disorder including osteoarthritis. (Doc. 11-2, at 15).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that Clemons did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Doc. 11-2, at 15). The ALJ considered the following listings: 1.02 – Major Dysfunction of a Joint, 3.00 *et. seq.* – Respiratory Disorders, SSR 12-2p – Evaluation of Fibromyalgia, and SSR 19-2p – Evaluating Cases Involving Obesity. (Doc. 11-2, at 15-16).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable medical impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

After weighing Clemons's statements against other evidence in the record, the ALJ found that Clemons's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms were not accepted to the extent Clemons claims to be inhibited. (Doc. 11-2, at 17). The ALJ then went on to detail Clemons's medical records and treatment history. (Doc. 11-2, at 17-20). Considering all evidence in the record, the ALJ determined that

> [Clemons] has the [RFC] to perform light work as defined in 20 CFR 404 1567(b) and 416.967(b)[,] except [she] is limited to occupations that require no more than frequent postural maneuvers, such as balancing, stooping, kneeling,

crawling, crouching, and climbing on ramps and stairs. [Clemons] may occasionally climb ladders. [Clemons] must avoid concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, extreme dampness, and humidity.

(Doc. 11-2, at 16).

### E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do the work. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Clemons's RFC to the demands of Clemons's past relevant work as a customer service agent, jewelry sales clerk, sales clerk, and a composite position as a front desk clerk and night auditor, the ALJ found that Clemons is capable of performing her past relevant work. (Doc. 11-2, at 20). The ALJ determined that Clemons "can do light work and her past relevant work was light work." (Doc. 11-2, at 21).

F. STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Although the ALJ found that Clemons could perform her past relevant work, he still proceeded to examine whether there are other jobs that exist in significant numbers in the national economy that Clemons could perform. (Doc. 11-2, at 21). Here, considering Clemons's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Clemons could have performed. (Doc. 11-2, at 21). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Clemons could have performed the requirements of representative occupations, such as a copy operator, counter clerk, and marker or ticketer with jobs ranging from 52,000 to 250,000 positions nationally. (Doc. 11-2, at 22).

Given the foregoing analysis, the ALJ determined that Clemons was not disabled and denied her applications for benefits. (Doc. 11-2, at 22-23).

IV. DISCUSSION

On appeal, Clemons argues that the ALJ did not adequately articulate why her subjective complaints were unsupported by the record. (Doc. 16, at 10). Clemons alleges that the ALJ has failed to adequately evaluate her subjective complaints. (Doc. 16, at 8). Specifically, Clemons contends that the ALJ erred in including "only cursory findings and boilerplate language and considerations" when evaluating her subjective complaints. (Doc. 16, at 8). Further, Clemons emphasizes the issue in the ALJ's approach when it comes to her

severe impairment of fibromyalgia. (Doc. 16, at 12-13). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and should be affirmed. (Doc. 19, at 2).

For the reasons set forth below, the Commissioner's decision to deny Clemons benefits will be **AFFIRMED** and **FINAL JUDGMENT** shall be entered in favor of the Commissioner.

### A.  SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT.

Clemons argues that the ALJ did not adequately address her subjective complaints and failed to state why they were unsupported. (Doc. 16, at 10). In response, the Commissioner states that the ALJ "followed the governing regulations and engaged in a comprehensive review of all evidence of record in evaluating [Clemons's] subjective statements regarding her functional limitations. (Doc. 19, at 8-9).

The Court of Appeals has ruled that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s). 20 C.F.R. § 404.1545(a); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 112, 121 (3d Cir. 2000). In determining the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). The ALJ, however, is only required to include

limitations credibly established by the medical evidence and not every limitation alleged. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

  The ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 11-2, at 18-19); *see* 20 C.F.R. § 404.1520c(a). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (plaintiff's "subjective complaints must be substantiated by medical evidence."). Additionally, the ALJ should consider the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529(a); *see also Chandler*, 667 F.3d at 363 ("statements about your pain or other symptoms will not alone establish that you are disabled."). "To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F. Supp. 3d 311, 337 (M.D. Pa. 2020). A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 404.1529.

The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.,* 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

The undersigned finds that the ALJ's analysis of Clemons's subjective symptom allegations is supported by substantial evidence. Clemons asserts that the ALJ failed to consider her subjective complaints and used "only cursory findings and boilerplate language and considerations." (Doc. 16, at 8).

The ALJ noted Clemons's subjective testimony as follows:

> [Clemons] testified she experienced back, knee, and hip pain. [Clemons] alleged she was unable to sit for long periods and often needed to lay down. [Clemons] explained she wore compression stockings and often had difficulty getting them on. She indicated she had little improvement with physical therapy. [Clemons] reported she could lift up to 10 pounds, sit for 1 hour, and stand for 20 minutes before incurring pain. [Clemons] testified she used a cane when outside of her home. She indicated she was able to care for her cat, drive, and grocery shop, but needed to take breaks while doing so. [Clemons] alleged she also experienced lung issues. She explained she used a daily inhaler and rescue inhaler to control her symptoms. [Clemons] indicated she had sensitivities to smells, chemicals, and cold. Overall, [Clemons] alleged she was unable to work due to her impairments (Exhibit 3E and Hearing testimony)

(Doc. 11-2, at 17).

The ALJ concluded that although Clemons's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

decision." (Doc. 11-2, 17). The ALJ then went on to evaluate the other evidence of record in assessing Clemons's RFC. (Doc. 11-2, at 17-20).

"Although the ALJ must give Plaintiff's subjective complaints of pain serious consideration, the ALJ may reject a claimant's complaints if he does not find them credible." *Powell v. Barnhart*, 437 F. Supp. 2d 340, 342 (E.D. Pa. 2006) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir.2002); *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999)). Clemons argues that the ALJ merely recites her testimony and other evidence on the record but fails to articulate why her subjective testimony was not persuasive. (Doc. 16, at 10). Clemons specifically notes the ALJ's failure to assess her subjective complaints regarding her fibromyalgia. (Doc. 16, at 12). Here, the ALJ considered Clemons's subjective complaints and compared them with the record in determining her credibility.

First, the ALJ considered Clemons's subjective complaints from her function report and testimony regarding her pain and ability to function. (Doc. 11-2, at 17, 87-91; Doc. 11-7, at 15-25). Next, the ALJ outlined in chronological order Clemons's reports and medical records including examinations, x-rays, and testing. (Doc. 11-2, at 17-18). Specifically, the ALJ noted Clemons's physical impairments and symptoms regarding a fall that occurred around her alleged onset date which resulted in her need to use a cane. (Doc. 11-2, at 17; Doc. 11-8, at 26). Further, the ALJ considered a physical examination performed in January 2019, where Clemons exhibited tenderness, negative joint deformities, good range of motion, negative spinal curvature, good muscle bulk and tone, 5/5 strength in her upper extremities, 4/5 strength in her lower extremities, and a stable and fluid gate. (Doc. 11-2, at 17; Doc. 11-8, at 27). The ALJ examined x-rays from April 2019 and a consultative examination that demonstrated that Clemons had a normal gait with or without her cane, some difficulty

walking on toes due to balance difficulty, normal stance, normal chest and lungs, negative straight leg test, no positive trigger points, 5/5 strength in her upper and lower extremities. (Doc. 11-2, at 17-18; Doc. 11-8, at 61-63, 102-17). Next, the ALJ noted an evaluation in May 2019, where Clemons displayed a good range of motion in her hips, knees, ankles, and feet; no crepitus of either knee; no significant tenderness with palpation of the knees; and tenderness over both of her SI joints. (Doc. 11-2, at 18; Doc. 11-9, at 7). A lumbar spine examination demonstrated flexion reaching the ankles and extension of 20 degrees with complaints of pain, a slight degree of pain with rotation, and side bending eliciting complaints of pain, but no demonstration of limitation. (Doc. 11-2, at 18; Doc. 11-9, at 7). Further, Clemons demonstrated an ability to rise on her toes, both in bilateral lower extremity and single lower extremity stance, and ambulate without significant difficulty, but used a cane for assistance. (Doc. 11-2, at 18; Doc. 11-9, at 7).

The ALJ noted Clemons's referral to physical therapy, Clemons's initial attendance from August 2019 to December 2019, Clemons's failure to continue physical therapy, and Clemons's testimony that she experienced a little improvement in her pain through physical therapy. (Doc. 11-2, at 18, 88; Doc. 11-9, at 5; Doc. 11-10, at 21; Doc. 11-11, at 2-73; Doc. 11-12, at 2-75 Doc. 11-13, at 2-73; Doc. 11-14, at 2-73; Doc. 11-15, at 2-28). The ALJ also noted Clemons's BMI indicating severe obesity; her history of fibromyalgia; and pulmonary function testing that revealed an FEV1 of 69% predicted, with no obstructive airflow defect, no significant response to the administration to bronchodilator, mild restrictive lung disease as indicated by decreased TLC, and mildly decreased diffusion capacity. (Doc. 11-2, at 18; Doc. 11-8, at 24, 27, 66-67, 94-99). Further, the ALJ noted Clemons's use of a daily inhaler and rescue inhaler to aid in her symptoms. (Doc. 11-2, at 18, 89; Doc. 11-8, at 25).

The ALJ considered Clemons's daily activities including her ability to cook, clean, and shop once a week and her ability to do laundry every two weeks. (Doc. 11-2, at 18; Doc. 11-8, at 103, 112). The ALJ also noted Clemons's ability to shower and dress herself independently along with her enjoyment of reading and socializing with friends. (Doc. 11-2, at 18; Doc. 11-8, at 103). The ALJ also examined medical opinions from, Dr. Glenda Cardillo, M.D.; Dr. Kevin Hollick, D.O.; and Dr. Ziba Monfared, M.D. and assessed their supportability and consistency with the record. (Doc. 11-2, at 19; Doc. 11-3, at 6-15, 20-29, 37-46; Doc. 11-8, at 102-117).

Further, the ALJ found that Clemons had a severe impairment regarding fibromyalgia, but held that her fibromyalgia did not meet or medically equal the severity of a listing. (Doc. 11-2, at 15). Specifically, the ALJ stated that Clemons had a history of fibromyalgia with a diagnosis in 2014 and the use of medications to maintain her symptoms. (Doc. 11-2, at 16; Doc. 11-8, at 25; Doc. 11-9, at 51). The ALJ noted examinations demonstrating tenderness in her upper and lower bilateral extremities upon palpation due to fibromyalgia but no specific trigger points, and a consultative examination finding of no positive trigger points. (Doc. 11-2, at 16; Doc. 11-8, at 27, 104; Doc. 11-9, at 70). The ALJ considered Clemons's failure to show up for multiple follow-up appointments with her rheumatologist. (Doc. 11-2, at 16; Doc. 11-9, at 7). The ALJ discussed Clemons's fibromyalgia multiple times in determining her RFC noting her history of fibromyalgia, the tenderness and palpations it caused, her reports of pain, and her treatment. (Doc. 11-2, at 17-19).

Clemons takes issue with the ALJ's use of "boilerplate language and considerations" in evaluating her subjective complaints. (Doc. 16, at 8-12). However, "cases involving similar 'boilerplate' language have held that an ALJ's assessment of a claimant's credibility is

supported by substantial evidence when it is based on a thorough examination of the overall record . . . ." *Jones v. Kijakazi*, No. CV 20-1074-SRF, 2022 WL 1016610, at *10 (D. Del. Apr. 5, 2022) (citing *Schuster v. Astrue*, 879 F. Supp. 2d 461, 471 (E.D. Pa. 2012); *Kellie F. v. Kijakazi*, No. 1:20-cv-9013, 2022 WL 203242, at *16 (D.N.J. Jan. 24, 2022); *see also Woodson v. Comm. of Soc. Sec.,* 661 F. App'x 762, 766-67 (3d Cir. 2016) (finding that substantial evidence supported an ALJ's decision when the claimant's subjective complaints were contradicted by the medical evidence of record and dismissed with "boilerplate language"). "Reliance on boilerplate language does not inevitably lead to a deficient administrative analysis where, as here, the ALJ proceeds to consider the evidence on the record as a whole." *Jones*, 2022 WL 1016610, at *10.

  In crafting the RFC, the ALJ considered all of Clemons's physical impairments and evaluated their impact on her ability to function by considering the objective medical evidence, medical opinions, Clemons's activities, and Clemons's subjective complaints. (Doc. 11-2, at 16-20). Based on all the above-mentioned evidence, the ALJ concluded that Clemons's symptom and limitation allegations "are not entirely consistent with the objective evidence of record." (Doc. 11-2, at 16). The ALJ accommodated some degree of Clemons's severe physical impairments in his RFC by limiting her to light work with additional limitation of "no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs; occasiona[l] climb[ing of] ladders; avoid[ing] concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, extreme dampness, and humidity." (Doc. 11-2, at 16). Therefore, the ALJ properly considered all the evidence of record, including Clemons's treatment records, activities, and symptom allegations. *See*

*Powell*, 437 F. Supp. 2d at 342 (upholding the ALJ's decision when he addressed the claimant's treatment history, treatment notes, work history, and activities in evaluating the claimant's subjective complaints).

Accordingly, substantial evidence supports the ALJ's evaluation of Clemons's limitations and RFC determination.fr

V.  **CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Clemons disability benefits and directs that **FINAL JUDGEMENT BE ENTERED** in favor of the Commissioner and against Clemons. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

                                                                                       BY THE COURT:

**Dated: August 5, 2022**                         *s/ Karoline Mehalchick*
                                                                              **KAROLINE MEHALCHICK**
                                                                              **Chief United States Magistrate Judge**